## SALES REPRESENTATIVE AND EMPLOYMENT AGREEMENT

This SALES REPRESENTATIVE AND EMPLOYMENT AGREEMENT (the "Agreement") is entered into effective as of January 1, 2013 ("Effective Date") by and between [Jeff Brown], an individual residing at 11 Lynn Drive Bedford NH 03110(the "Representative") and Thermal Surgical, LLC, a Vermont limited liability corporation with a principal place of business at 15 Baycrest Drive, South Burlington, Vermont 05403 ("Thermal Surgical") (each a "Party" and collectively "the Parties").

WHEREAS, Thermal Surgical has entered into a certain Exclusive Sales Representative Agreement with NuVasive, Inc. ("NuVasive") pursuant to which Thermal Surgical is the exclusive agent to sell NuVasive products;

WHEREAS, Thermal Surgical desires to employ Representative to be its sales representative to sell NuVasive Products as further defined herein;

WHEREAS, Representative desired to be the sales representative to Thermal as set forth herein.

- **DEFINITIONS**

  - "Products" means those products listed in **Exhibit A** attached hereto. Products subject to this Agreement may be changed, discontinued or added by Thermal Surgical, at its sole discretion. Such change, discontinuation and/or addition shall be effective immediately after delivery by Thermal Surgical to Representative of a new **Exhibit A**.

  - "Territory" means the geographic areas and/or specific institutions listed on **Exhibit B** hereto. The Territory may be increased or decreased by agreement of the Parties in writing. Thermal Surgical may, in its sole discretion, decrease the Territory if (i) the Territory is not sufficiently covered by sufficient representation as determined by Thermal Surgincal in its sole discretion, (ii) Representative is in violation of Section 5.4, 5.6 or 5.7 of this Agreement, or (iii) Representative is in Poor Standing.

- **EMPLOYMENT OF REPRESENTATIVE**

  - **Exclusive Sales Representative.** Subject to the terms and conditions herein, Thermal Surgical hereby employs Representative as Thermal Surgical's exclusive sales representative for Products in the Territory, and Representative hereby accepts such employment. Representative's sole authority shall be to solicit orders for Products in the Territory in accordance with the terms of this Agreement. Representative shall not have the authority to make any commitments whatsoever on behalf of Thermal Surgical or NuVasive..

  - **Territorial Limitation**. Representative shall not, directly or indirectly, (i) advertise or promote any Products outside the Territory; (ii) solicit or procure any orders for Products from outside the Territory; or (iii) otherwise act as Thermal Surgical's representative with respect to the Products outside the Territory, without the prior written consent of Thermal Surgical. Representative may only submit and procure orders from customers located and taking delivery of Products within the Territory.

  - **At Will Employment**. The relationship of the Parties established by this Agreement is that of an "at will" employee and may be terminated at any time, with or without cause, and with or without notice.



- <u>Conflicts of Interest.</u> Representative represents and warrants to Thermal Surgical that it does not (nor does any entity or person affiliated with it) currently represent or promote any lines or products that are competitive with any NuVasive Product or with Thermal Surgical, and that it shall not (nor shall any entity or person affiliated with it) during the Term, directly or indirectly, represent, promote, sell or otherwise commercialize within the Territory (i) any lines or products that are competitive with any Product covered by this Agreement or (ii) any NuVasive products for use in spine surgery. Further, during the Term, Representative shall not, directly or indirectly, represent, promote, sell or otherwise commercialize any products (other than the Products) without the prior written consent of Thermal Surgical. Representative has identified on **Exhibit E**, all products and/or services for which Representative or Representative's affiliates, directly or indirectly, acts as a sale representative, employee, or other agent. Representative agrees that it is a material term of this Agreement that **Exhibit E** be complete and accurate at all times, agrees to provide updates as needed to **Exhibit E**, agrees to appropriately inquire of all Representative's affiliates and representatives to confirm the accuracy of such information, and agrees that failure to accurately and timely disclose all required information on **Exhibit E** will place Representative in Poor Standing hereunder for a period of at least one (1) year from the date on which **Exhibit E** is properly updated. In addition, Representative represents that its performance of all the terms of this Agreement and as an agent of Thermal Surgical does not and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by it in confidence or in trust prior to its engagement by Thermal Surgical, and Representative agrees not to disclose to Thermal Surgical any confidential or proprietary information or material belonging to any previous employers or other entities with whom Representative has been involved. Representative represents and warrants that it has not entered into (and is not bound by) any agreement, either written or oral, that is in conflict herewith or in conflict with the engagement contemplated hereby. Representative shall devote substantially all of his business time and attention to the performance of his duties hereunder and will not engage in any other business or profession or occupation for compensation or otherwise which would conflict or interfere with the performance of such services either directly or indirectly without the prior written consent of Thermal Surgical. Representative further represents and warrants that Representative will not, directly or indirectly, engage in the development of products or intellectual property that are for use in (or applicable to) spine surgery, and that Representative has disclosed to Thermal Surgical all relevant details regarding any such development activity that has occurred in the past.

- **COMPENSATION**

    - <u>Compensation.</u> Representative's sole compensation under the terms of this Agreement shall be a commission ("Commission") and potential bonus ("Bonus") in accordance with the schedule set forth in **Exhibit C** hereto.

    - <u>Basis of Commission.</u> The Commission shall apply to all Product orders (i) procured by Representative from customers within the Territory in accordance with this Agreement; (ii) that have been accepted by Thermal Surgical; and (iii) for which shipment of Products and recognition of revenue by Thermal Surgical from NuVasive has occurred. Commissions shall be computed based on "Net Sales" which shall, for purposes of this Agreement, be defined as the dollar amount actually received by Thermal Surgical from NuVasive for the sales of the Product(s) related to Representative's Territory, less charges for shipping, handling, freight, taxes, C.O.D. charges, insurance, tariffs and duties, cash and trade discounts, rebates, <u>charge back payments to managed healthcare organizations,</u> GPO administrative fees, amounts allowed or credited for returns, uncollected or uncollectable amounts, services, taxes imposed upon the sale of the Products, including without limitation the medical device tax, and the like.

    - <u>Time and Manner of Payment.</u> The Commission pursuant to Section 3 on a given order shall be due and payable ten (10) business days after Thermal Surgical receives payment from NuVasive.

- Commission Charge Back. Thermal Surgical shall have the absolute right to set such cash discounts, to make such allowances and adjustments, to accept such returns from its customers, and to write off as bad debts such overdue customer accounts as it deems advisable in its discretion. In each such case, Thermal Surgical shall charge back to Representative's account any Commission previously paid or credited to it with respect to such cash discounts, allowances, adjustments, returns or bad debts. Representative also agrees to accept charges for: (i) pricing arrangements (or side deals) not approved by Thermal Surgical or noncompliance with Thermal Surgical's policy against "house accounts" maintained by Representative; (ii) lost, damaged or missing inventory; (iii) failure to comply with Thermal Surgical's or NuVasive's communicated policies, e.g., inventory management policy and pricing policy as updated from time to time; (iv) courier charges for the delivery of Products when standard method of shipping was available (v) $100.00 per day per set of unreturned or unextended sets of inventory.

- Monthly Statements. Thermal Surgical shall submit to Representative monthly statements of the Commissions due and payable to Representative under the terms of this Agreement, with reference to the specific invoices on which the Commissions are being paid.

- Participation in Benefit Plans. In addition to the commissions provided for in the foregoing paragraphs, Representative shall be entitled, while performing services for Thermal Surgical, to participate in employee benefit plans or programs of Thermal Surgical to the extent that Representative's position, title, tenure, salary, age, health and other qualifications make Representative eligible to participate. Thermal Surgical does not guarantee the adoption or continuance of any particular benefit plan or program during the employment period, and Representative's participation in any such plan or program shall be subject to the provisions, rules and regulations applicable thereto and consistent with federal and state law.

- Vacation. Upon completion of one year of performance under this Agreement, Representative shall thereafter be entitled to two (2) weeks of unpaid vacation per year. Upon completion of five (5) years of employment, Representative shall be entitled to three (3) weeks of unpaid vacation per year. Vacations shall be scheduled at the mutual convenience of Thermal Surgical and Representative with at least six (6) weeks advance notice. In the event that Representative is paid in a guaranteed monthly salary in addition to commissions, Thermal Surgical will not deduct from the guaranteed monthly salary for those weeks taken for vacation. Nothing contained in this section requires Thermal Surgical nor entitles Representative to any payment for unused vacation upon separation from service.

- Expenses. Thermal Surgical will reimburse Representative for reasonable business expenses of a nature and amount approved by Thermal Surgical set forth on **Exhibit C**.

- **SALE OF THE PRODUCTS**

    - Prices and Terms of Sale. Representative will comply with current price lists, delivery schedules, and standard terms and conditions of sale, provided by NuVasive.

    - Orders; Acceptance. All orders for the Products shall be in writing, and the originals shall be submitted to Thermal Surgical. Representative shall have no authority to accept any returned Products.

- **ADDITIONAL OBLIGATIONS OF REPRESENTATIVE**

    5.1 Quota Commitment. Representative shall solicit orders that are submitted to Thermal Surgical in accordance with this Agreement for the quantity of Products set forth in **Exhibit D**

attached hereto ("Quota Commitment"). The Quota Commitment shall be determined, based on dialogue with Representative, by Thermal Surgical in its sole discretion and delivered to Representative within thirty (30) days of the end of each calendar year, or as may be delivered to Representative by Thermal Surgical from time to time (it being understood that Thermal Surgical intends to deliver a Quota Commitment at intervals more frequently than annually only with respect to newly introduced products). If Representative (i) fails to secure orders for ninety-five percent (95%) of its aggregate Quota Commitment in any two consecutive calendar quarters, or (ii) fails to secure orders for ninety-five percent (95%) of its aggregate Quota Commitment for any given calendar year, then Representative shall be deemed in "Poor Standing" and Thermal Surgical may, at its discretion and without prejudice to any other rights Thermal Surgical may have under this Agreement, terminate Representative's exclusivity granted in Section 2.1 herein and appoint one or more additional representatives for sale of Products in the Territory, reduce the Territory per Section 1.2, and/or terminate the Agreement at will per Section 8.3. If Representative is deemed to be in Poor Standing, Representative will remain in Poor Standing and Representative will maintain all rights granted to it as a result until such time as Representative regarding good standing by achieving its Quota Commitment for a full calendar quarter or the calendar year Orders fulfilling the Quota Commitment shall be based on bona fide orders submitted to Thermal Surgical that would, upon acceptance by Thermal Surgical, qualify for the payment of a Commission to Representative.

5.2 Representations; Marketing. Thermal Surgical shall provide Representative with marketing and technical information concerning the Products as well as reasonable quantifies of brochures, instructional material, advertising literature, product samples and other Product data ("Promotional Materials"). Representative represents and warrants it shall not make any false or misleading representations to customers or others regarding Thermal Surgical or the NuVasive Products, or about Thermal Surgical competitors or competitor products. Representative represents and warrants that it shall not make any representations, warranties or guarantees with respect to the specifications, features or capabilities of the Products that are not consistent with, or otherwise expand upon the claims in, the Promotional Materials or other documentation supplied by Thermal Surgical. Representative represents and warrants that it shall use only the Promotional Materials supplied by Thermal Surgical in its promotion of the Products. Representative represents and warrants that in no event shall Representative make any guarantee or warranty concerning the Products that is inconsistent with, or otherwise expands upon, Thermal Surgical's standard limited warranty or on behalf of any vendor or supplier of Thermal Surgical. Representative represents and warrants that it shall promote and market the Products in accordance with the training provided by Thermal Surgical.

5.3 Compliance with Laws and Policies. Representative represents and warrants that it will comply with all applicable federal, state, local, municipal, regulatory and/or governmental agency laws, statutes, regulations, edicts, guidance, directives, and ordinances, including, without limitation, (a) the Social Security Act; (b) HIPAA, (c) all federal and state health care anti-fraud, anti-kickback and abuse laws such as 42 U.S.C. § 1320a-7b(b); (d) the Federal Food, Drug, and Cosmetic Act and its implementing regulations; (e) all rules, regulations, and guidance of the FDA; and (f) all rules and regulations of the Center for Medicare and Medicaid Services (CMS). Without limiting the generality of the foregoing, except to the extent allowed by applicable law, Representative will make no offer, payment or other inducement, whether directly or indirectly, to induce the referral of business, the purchase, lease or order of any item or service, or the recommending of the purchase, lease or order of any item or service. Representative will comply, and will ensure its personnel carrying out activities under this Agreement comply, with all operating and compliance policies of Thermal Surgical or compliance policies that Thermal Surgical is required to comply with from NuVasive. Representative shall provide on a timely basis, to be determined by Thermal Surgical, all information of Representative and/or its personnel and affiliates to comply with the Physician Payments Sunshine Act and/or any similar state law.

5.4     Regulatory Compliance. Representative will not alter or modify the Product(s) in any way prior to delivery to customers. Representative shall at all times conduct its activities on behalf of Thermal Surgical in accordance with the labeling limitations on the Products, the terms of this Agreement, Thermal Surgical's written policies and procedures, and in compliance with applicable state and federal laws in effect from time to time, including the FDA's quality system regulations (QSR), Adverse Event Reporting System (AERS) and/or current good manufacturing practice (cGMP) regulations and shall undertake all required compliance actions, including establishing and implementing all required control and reporting procedures. Representative shall provide Thermal Surgical with such information and data as may be requested by Company pursuant to this Agreement.

5.5     Agreement Regarding Competitive Products; Non-Solicitation. During Representative's employment and for a period of eighteen (18) months following the expiration or termination of such employment, Representative shall not (i) develop, represent, promote or otherwise try to sell within the Territory any lines or products that, in Thermal Surgical's reasonable judgment, compete with the NuVasive Products covered by this Agreement, (ii) solicit (directly or indirectly) any current or former customers of Thermal Surgical or NuVasive to purchase any products or lines that are, in the Company's reasonable judgment, competitive with the Products covered by this Agreement, or (iii) solicit or offer work to, directly or indirectly, any of Thermal Surgical's or NuVasive's employees, agents or representatives.

Thermal Surgical and Representative acknowledge and agree that the foregoing non-competition covenants are reasonable and necessary to protect the legitimate interests of Thermal Surgical, including without limitation, the protection of Confidential Information. Representative further acknowledges and agrees that such covenants are an essential part of, and consideration for, Thermal Surgical's promises contained in this Agreement.

If any provision of this Agreement is held to be unenforceable, such provision will be distinct and severable from the other provisions of this Agreement, and such unenforceability will not affect the validity and enforceability of the remaining provisions. If a court holds that the duration, scope, geographic range, or any other restriction stated in any provision of this Agreement in unreasonable under circumstances then existing, the parties agree that the maximum duration, scope, geographic range, or other restriction that the court deems reasonable under such circumstances will be substituted and that the court will have the power to revise any of those restrictions to cover the maximum period, scope, geographic range, and/or other restriction permitted by law. It is the intent of the parties that the court, in establishing any such substitute restriction, recognize that the parties' desire is that the stated restrictions upon which the parties have agreed to be honored to the maximum lawful extent.

5.6     Debarment. Representative represents and warrants that neither it nor any of its personnel carrying out activities under this Agreement have been nor are debarred, suspended, excluded or are otherwise ineligible under Section 306 of the Federal Food, Drug and Cosmetic Act (as amended by the Generic Drug Enforcement Act of 1992), 21 U.S.C. § 336, or are listed on any applicable federal exclusion list including the then-current: (a) HHS/OIG List of Excluded Individuals/Entities (available through the Internet at http://www.oig.hhs.gov); (b) General Services Administration's List of Parties Excluded from Federal Programs (available through the Internet at http://www.epls.gov); and (c) FDA Debarment List (available through the internet at http://www.fda.gov/ora/compliance_ref/debar/).

5.7     Interaction with Health Care Professionals. Representative represents and warrants that neither it nor any of its personnel carrying out activities under this Agreement currently have any form of compensation arrangement with any Health Care Professional other than an agreement to purchase

product. Representative agrees that neither it nor any of its personnel shall enter into, any arrangement (e.g., grants, donations, sponsorships, reimbursement of expenses, etc.) or agreement, oral or written, with a Health Care Professional, other than for the purchase of product without the express prior written consent of Thermal Surgical's Compliance Officer or his/her designee.

5.8 <u>Insurance.</u> Sales Representative shall maintain automobile liability coverage of no less than $500,000 per person injury or $500,000 per person/$1,000,000 per accident bodily injury, $100,000 property damage and provide Thermal Surgical with written evidence thereof prior to employment.

5.9 <u>Compliance.</u> Representative agrees to maintain all records required to substantiate compliance with all such laws, regulations, policies, procedures and guidelines and terms of this Agreement for the term of the Agreement plus an additional six (6) years after its expiration or termination.

5.10 <u>Non-Disparagement.</u> Representative shall not in any way disparage NuVasive, its Products, or its agents or employees or Thermal Surgical or its agents or employees, including witout limitation, taking any action or making any statement, the intent or reasonably foreseeable effect of which is to impugn or injure the reputation or goodwill of NuVasive or any of its agents or employees or Thermal Surgical or any of its agents or employees.

5.11 <u>Authority.</u> Representative represents that Representative has full authority and power to enter into this Agreement and to carry out the provisions hereof.

5.12 <u>Binding Agreement.</u> This Agreement is a legal and valid obligations, binding upon the parties and enforceable in accordance with its terms. The execution, delivery and performance of this Agreement by the parties does not conflict with any agreement, instrument or understanding, oral or written, to which it is a party or by which it may be bound, nor violate any material law or regulation of any court, governmental body or administrative or other agency having jurisdiction over it.

- **ADDITIONAL OBLIGATIONS OF THERMAL SURGICAL**

6.1 <u>Training by Thermal Surgical.</u> Thermal Surgical shall provide sales and compliance training to Representative at periodic intervals, with the frequency and content of the training to be determined by Thermal Surgical. When possible, such training shall be given at Representative's facilities, but it may be necessary to provide combined training at a geographically central location near but not in the Territory. Travel and expenses associated with attendance by Representative shall be borne by Distributor Principal. Representative shall sign all certifications confirming its training as may be requested by Thermal Surgical.

6.2 <u>Promotional Materials.</u> Thermal Surgical shall provide Representative with marketing and technical information concerning the Products as well as reasonable quantities of brochures, instructional material, advertising literature, product samples, and other Product data ("Promotional Materials"). Thermal Surgical may charge Representative for such materials. Representative shall not add, delete, or modify any language in the Promotions Materials in any manner, except for adding Representative contact information. Under no circumstances shall Representative use any other promotional material or literature regarding the Products without the prior written consent of Thermal Surgical.

- **CONFIDENTIALITY**

- Confidential Information. "Confidential Information" means the proprietary or confidential information of Thermal Surgical which is disclosed to Representative, whether before or after the Effective Date, and (a) if disclosed in writing, is marked as confidential at the time of disclosure, or (b) if disclosed orally or in other intangible form, is identified and treated as confidential at time of disclosure and identified in writing and marked confidential within thirty (30) days after disclosure and relates to products, plans, designs, costs, prices, finances, marketing plans, business opportunities, personnel, research, development, know-how, trade secrets, inventions, blueprints, techniques, processes, algorithms, software programs, schematics, designs, contracts, customer lists, procedures, formulae, patent applications and other information relating to Thermal Surgical's business, services, processes or technology. Confidential Information shall not include information that Representative proves: (i) was known by Representative or was publicly available prior to disclosure by Thermal Surgical to Representative; (ii) became publicly available after disclosure by Thermal Surgical to Representative through no act of Representative; (iii) is hereafter rightfully furnished to Representative by a third party without confidentiality restriction; or (iv) is disclosed with the prior written consent of Thermal Surgical or as expressly authorized under this Agreement.

- Non-Disclosure. Parties shall not, except as otherwise expressly provided herein, use, disclose, disseminate or otherwise allow access to the Confidential Information of the other Party to anyone other than to employees that have a need to know such Confidential Information to implement this Agreement and who are bound by written confidentiality obligations with provisions no less stringent than those contained in this Section 7. Each Party shall prevent unauthorized disclosure or use of the Confidential Information of the other Party. Parties shall execute all documents and otherwise shall take all necessary steps to ensure that each be able to enforce rights hereunder pertaining to Confidential Information. Parties shall be responsible for any breach of this Section 7.2 by employees, contractors or agents.

- Ownership. Representative acknowledges and agrees that Thermal Surgical (or its licensors) owns all rights, title and interests, including intellectual property rights, in and to Thermal Surgical's Confidential Information.

- Notification. If Representative learns or believes that any person who has access to the Confidential Information of Thermal Surgical has violated or intends to violate this Agreement, Representative shall immediately notify Thermal Surgical and shall cooperate with Thermal Surgical in seeking injunctive or other equitable relief against any such person.

- Exceptions. Representative may disclose the Confidential Information of Thermal Surgical, only if such disclosure is required by law, provided that Representative promptly notifies Thermal Surgical to allow intervention by Thermal Surgical (prior to the disclosure), cooperates with Thermal Surgical to contest or minimize the disclosure (including application for a protective order) at Thermal Surgical's expense and limits such disclosure to the party entitled to receive the Confidential Information and to the scope of the legal requirement. Notwithstanding the foregoing, any Confidential Information disclosed pursuant to this Section 7.5 shall otherwise continue to be treated as Confidential Information hereunder. Notwithstanding anything to the contrary, Representative must obtain the consent of Thermal Surgical prior to disclosure of this Agreement to any third party.

- Confidentiality of Agreement. Representative shall not disclose any term of this Agreement or announce the existence of this Agreement without the prior written consent of Thermal Surgical.

- Reproduction of Confidential Information. Confidential Information shall not be reproduced except as required to implement this Agreement. Any reproduction or derivative of any

<u>Confidential Information of Thermal Surgical by Representative shall remain the property of Thermal Surgical and shall contain all confidential or proprietary notices or legends which appear on the original.</u>

- <u>Equitable Remedies</u>. Any unauthorized disclosure or use of Confidential Information by Parties shall be a material breach of this Agreement, and Parties shall be entitled to all remedies available under law or in equity, including without limitation injunctive relief without the need to post a bond therefor.

- **TERM AND TERMINATION**

  - <u>Term</u>. Unless terminated earlier as specifically provided herein, the term of this Agreement shall be from this date forward until its termination. The confidentiality provisions and restrictive covenants set forth in Articles 5 and 7 shall survive termination of this Agreement.

  - <u>Termination by Representative</u>. Representative may terminate this Agreement with or without cause at any time.

  - <u>Termination by Thermal Surgical</u>. Thermal Surgical may terminate this Agreement with or without cause at any time.

  - <u>Prior Rights and Obligation</u>. Any termination of this Agreement shall not affect any rights or obligations of the Parties, which shall have arisen hereunder prior to the date of termination.

  - <u>Information Concerning Sales Territory</u>. In the event of termination, Representative agrees to furnish Thermal Surgical with complete information as to the status of Representative's activities, including the status of accounts, information learned from sales calls, the nature of negotiations for other sales, etc. Representative shall immediately return to Thermal Surgical all products, instruments, consignment inventory, samples, brochures, catalogs and other marketing aids and any other materials, electronics, and any Confidential Information.

  - <u>Payment of Sums Owed</u>. Upon termination of this Agreement for any reason, Representative agrees immediately to pay Thermal Surgical all sums of money that Representative owes to Thermal Surgical, including but not limited to, amounts owed for samples, brochures, unaccounted for inventory, previous errors in compensation payment and charge-backs. If the amounts due Thermal Surgical are not paid within twenty (20) days, Thermal Surgical will deduct the amounts dues from Commission Bonus Incentives or Discretionary Post- Termination Commissions, if any. Representative specifically acknowledges Thermal Surgical's right to withhold discretionary payments such as Commission Bonus Incentives and Discretionary Post-termination Commissions as described herein until such time as these amounts due Thermal Surgical have been paid, and understands that this policy is essential for the efficient management of Thermal Surgical.

  <u>Survival</u>. In the event of termination of this Agreement for any reason, Sections 5.5, 5.10, 7, 9.1, and 9.2 shall survive, except that Section 7 shall survive for a period of three (3) years from the date of termination, except for Confidential Information that constitutes a trade secret under any applicable law, in which case, such obligations shall survive for as long as such Confidential Information remains a trade secret under such law.

- **MISCELLANEOUS**

- **Governing Law and Jurisdiction.** This Agreement shall be subject to and governed by the laws of the State of Vermont, irrespective of the fact that either party is or may become a resident of a different state and without regard to conflicts of law principles. Representative hereby irrevocably submits and consents to the exclusive jurisdiction of the state and federal courts located in the State of Vermont with respect to any action or proceeding arising out of this Agreement, or any matter arising therefrom or relating thereto. Representative agrees that any such action or proceeding must be litigated only in a federal or state court located in Chittenden County and the Representative waives any objection based on *forum non conveniens* and any objection to venue in connection therewith.

- **Notices.** Any notice required or permitted by this Agreement shall be in writing and shall be sent by prepaid registered or certified mail, return receipt requested, addressed to the other party at the address shown below or such other address for which such party gives notice hereunder. Such notice shall be deemed to have been given three (3) days after deposit in the mail.

| | |
|---|---|
| To Thermal Surgical: | Thermal Surgical, Inc.<br>15 Baycrest Drive<br>South Burlington, Vermont 05403 I<br>Attention: Gregory Sweet |
| To Representative: | Jeff Brown<br>11 Lynn Drive<br>Bedford, NH 03110 |

- **Severability.** If any provision(s) of this Agreement shall be held invalid, illegal or unenforceable by a court of competent jurisdiction, the remainder of the Agreement shall be valid and enforceable and the parties shall negotiate in good faith a substitute, valid and enforceable provision which most nearly effects the parties' intent in entering into this Agreement.

- **Modification; Waiver.** This Agreement may not be altered, amended or modified in any way except in a writing signed by both parties. The failure of a party to enforce any provision of the Agreement shall not be construed to be a waiver of the right of such party to thereafter enforce that provision or any other provision or right.

- **Entire Agreement.** This Agreement and the exhibits hereto represent and constitute the sole, final and entire agreement between the parties, and supersedes and merges all prior negotiations, agreements and understandings, oral or written, with respect to the matters covered by this Agreement.

- **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument. The parties agree that a facsimile may be executed as an original.

- **Advice of Counsel.** Each of the parties to this Agreement represent that they have had the opportunity to seek the advice of counsel with respect to the negotiation and execution of this Agreement. Representative further represents that it has executed this Agreement of its own free will and is not relying on counsel for Thermal Surgical with respect to any portion of this Agreement.

- **No Implied Licenses.** Except as explicitly set forth herein, Representative is not granted any explicit or implied licenses in this Agreement.

- **Compliance.** Representative agrees to maintain all records required to substantiate compliance with all such laws, regulations, policies, procedures and guidelines and terms of this

Agreement for the term of the Agreement plus an additional six years. Representative shall not in any way disparage Thermal Surgical, its products, or its agents or employees, including, without limitation, taking any action or making any statement the intent or reasonably foreseeable effect of which is to impugn or injure the reputation or goodwill of Thermal Surgical or any of its agents or employees.

This AGREEMENT is entered into and binding upon the Parties as of the Effective Date:

|  | THERMAL SURGICAL, LLC |
|---|---|
| [Representative Name] | By: Gregory Sweet |

EXHIBIT A
PRODUCTS

This Exhibit is incorporated by reference into and made a part of the Exclusive Sales Representative Agreement (the "Agreement") between the Company and Representative (as defined in the Agreement). Any capitalized terms not defined in this Exhibit shall have the meaning set forth in the Agreement. Should a conflict arise between this Exhibit and the Agreement, the provisions of this Exhibit shall control.

Products: **All NuVasive Products**
EXHIBIT B
TERRITORY

This Exhibit is incorporated by reference into and made a part of the Exclusive Sales Representative Agreement (the "Agreement") between the Company and Representative (as defined in the Agreement). Any capitalized terms not defined in this Exhibit shall have the meaning set forth in the Agreement.

Should a conflict arise between this Exhibit and the Agreement, the provisions of this Exhibit shall control.

### Territory:
### State of NH except Dr. Fleisher, Dr. Nguyen, and Dr. Radwan
### Portland Maine – Maine Medical and Mercy Hospital

### EXHIBIT C
### COMMISSIONS AND BONUSES, EXPENSES

This Exhibit is incorporated by reference into and made a part of the Exclusive Sales Representative Agreement (the "Agreement") between the Company and Representative (as defined in the Agreement). Any capitalized terms not defined in this Exhibit shall have the meaning set forth in the Agreement. Should a conflict arise between this Exhibit and the Agreement, the provisions of this Exhibit shall control.

### COMMISSIONS AND BONUSES

Representative shall be entitled to 8% of Representative's Net Sales as Commission if Representative is in Poor Standing.

If the Representative is in good standing, the Representative shall be entitled to 9% of Representative's Net Sales as Commission and the following Bonuses:

- Representative shall be entitled to an additional 1% of Representative's Net Sales if Representative successfully completes sales in three out of the five Bucket Categories.
- Representative shall be entitled to an additional 2% of Representative's Net Sales if Representative successfully completes sales in any four out of the five Bucket Categories.
- Representative shall be entitled to an additional 3% of Representative's Net Sales if Representative successfully completes sales in any five out of five Bucket Categories.

"Bucket Categories" shall mean sales in the following medical product categories: (1) Anterior Lumbar; (2) Biologics; (3) Cervical; (4) NV, or; (5) Posterior Lumbar.

### EXPENSES

Reimbursable business expenses shall be capped at $3000 per quarter and shall only include reasonable expenses approved by Thermal Surgical in its sole discretion and shall in no event include:

Car Payment
Expense without proof of payment and an itemized receipt

Representative shall submit invoices for each expense in the form and manner required by Thermal Surgical and provided, such amounts in the aggregate do not exceed the quarterly cap, Thermal Surgical will reimburse the expense on a monthly basis.

### TRAINING EXPENSES

Thermal Surgical and Representative shall each be responsible for fifty percent (50%) of the costs of training potential buyers of the products. If the buyer purchases the product for three (3) cases or for an amount of Ten Thousand and 00/100 Dollars ($10,000) or greater within ninety (90) days following the date of the training, Thermal Surgical shall reimburse Representative for its 50% of the training costs.

## EXHIBIT D

## 2013 QUOTA COMMITMENT

This Exhibit is incorporated by reference into and made a part of the Exclusive Sales Representative Agreement (the "Agreement") between the Company and Representative (as defined in the Agreement). Any capitalized terms not defined in this Exhibit shall have the meaning set forth in the Agreement. Should a conflict arise between this Exhibit and the Agreement, the provisions of this Exhibit shall control.

**EXHIBIT E**

[Insert list products and/or services for which Representative or Representative's affiliates acts as a sale representative, employee, or other agent]